IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY F. BARNETT, | : | CIVIL ACTION |
|      **Plaintiff** | : | |
| | : | |
|   **vs.** | : | NO. 14-2414 |
| | : | |
| THE SCHOOL DISTRICT OF | : | |
| LANCASTER, et al., | : | |
|      **Defendants** | : | |

# M E M O R A N D U M

**STENGEL, J.**                                             **March 24, 2015**

Mary F. Barnett filed this civil action against the School District of Lancaster and two of its employees alleging violations of the Fourteenth Amendment, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Americans with Disabilities Act, and the Pennsylvania Human Relations Act. The amended complaint also alleges claims for tortious interference with contractual relations, and intentional infliction of emotional distress. The defendants have moved to dismiss the amended complaint, and Ms. Barnett has responded. For the reasons that follow, I will grant the motion in part, and deny it in part.

## I.  BACKGROUND[1]

Ms. Barnett is a fifty-seven year old recovering alcoholic with at least six years of sobriety. She worked for the School District of Lancaster as a long-term substitute for

---

[1] The facts are gleaned from the amended complaint and the extrinsic documents upon which it is based. See GSC Partners, CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiff, as the non-moving party, and are accepted as true with all reasonable inferences drawn in her favor.

learning support students during the 2008-2009 academic year.  Her performance was
evaluated as "outstanding" and, as a result, Ms. Barnett was recommended for permanent
employment with the District.  For the 2009-2010 academic year, Ms. Barnett was hired
pursuant to a three-year contract as a learning support teacher at Wheatland Middle
School in the District.  According to the contract, Ms. Barnett would spend the first three
years as a Temporary Professional Employee, and if all went well, she would be tenured
with permanent standing starting in her fourth year.  Specifically, Paragraph IV of the
contract states that the contract would continue until the expiration of three years of
satisfactory service unless:

> [T]erminated by the Board of School Directors after a
> notice in writing that said Temporary Professional
> Employee has been rated unsatisfactory by the District
> Superintendent of Schools, which notice shall be
> furnished the Temporary Professional Employee within
> ten (10) days following the date of the unsatisfactory
> rating, or unless sooner terminated by the Temporary
> Professional Employee by a resignation presented sixty
> (60) days before the resignation becomes effective.

See Am.Compl. Exh. C.

For the first two years of Ms. Barnett's contract, the principal of Wheatland was
Martin Slaugh.  Ms. Barnett received satisfactory and proficient performance evaluations
while Mr. Slaugh was principal.  Mr. Slaugh retired after the 2010-2011 academic year
and was replaced as principal by Defendant Jay Butterfield for the 2011-2012 academic
year.

Ms. Barnett continued to receive positive reviews at the beginning of the third year
of her contract.  On November 21, 2011, Kimberlee A. Cruz, the assistant principal of

2

Wheatland "highly" recommended Ms. Barnett as a candidate for an elementary special education teaching position.  <u>See</u> Am.Compl. Exh. D.

In December 2011, Ms. Barnett informed Principal Butterfield that she was a recovering alcoholic.  Within a month, Defendant Butterfield gave Ms. Barnett an unsatisfactory evaluation, and stated that her "deficits are significant and persistent."  Ms. Barnett disagreed with that evaluation, and presented Defendant Butterfield with an improvement plan and asked for his suggestions.  Defendant Butterfield did not comply with that request, but thanked her for providing him with her perspective.  <u>See</u> Am.Compl. Exh. E.

On March 2, 2012, Ms. Barnett was called to a meeting with Defendant Butterfield, Defendant Mark Holman, and Stephen Hefner, a union representative.  The complaint alleges that during that meeting, Ms. Barnett was pressured to resign her employment effective June 2012.  Defendant Holman, the District's Director of Human Resources, also threatened to report Ms. Barnett to the Pennsylvania Department of Education for incompetence "to revoke her certification ***unless*** she resigned from employment."  <u>See</u> Am.Compl. ¶ 30 (emphasis in original).  Of course, Ms. Barnett became "scared, intimidated, fearful, and emotionally distressed over the threat of losing her teaching license, career, and livelihood."  <u>Id.</u> at ¶ 31.  Defendants Butterfield and Holman insisted that Ms. Barnett's resignation be irrevocable.

Attached to the amended complaint is a Letter of Agreement between the District and the Lancaster Education Association dated May 16, 2012.  <u>See</u> Am.Compl. Exh. I.  The Agreement indicates that while Ms. Barnett's resignation would become effective on

3

the last day of the school year, the District would provide her with an overall satisfactory

summative for the 2011-2012 school year, and a neutral letter of recommendation.  Id.

The Agreement also indicated that the District would remove and destroy any evidence of

the mid-year unsatisfactory evaluation from Ms. Barnett's record, and purge her

personnel file.  Id.  It also stated that the District would not report Ms. Barnett to the

Pennsylvania Department of Education.  On May 16, 2012, Ms. Barnett submitted a

signed document dated March 25, 2012, addressed "To Whom It May Concern," in

which she submitted her irrevocable resignation with the District effective June 2012.

See Am.Compl. Exh. H.

## II.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure

for failure to state a claim upon which relief can be granted examines the sufficiency of

the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Following the Supreme

Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and

Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleadings standards in federal actions have

shifted from simple notice pleading to a more heightened form of pleading, requiring a

plaintiff to plead more than the possibility of relief to survive a motion to dismiss under

Fed. R. Civ. P.12(b)(6).  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir.

2009); see also Phillips v. County of Allegheny, 515 F. 3d 224, 230 (3d Cir. 2008).

Therefore, when presented with a motion to dismiss for failure to state a claim,

district courts should conduct a two-part analysis.  First, the factual and legal elements of

a claim should be separated.  The court must accept all of the complaint's well-pleaded

facts as true but may disregard legal conclusions.  Iqbal, 556 U.S. at 679.  Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  Id.  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  Id.; see also Phillips, 515 F.3d at 234-235.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  Id. at 557.

## III.  DISCUSSION

### A.  Count One – 42 U.S.C. § 1983

Ms. Barnett brought this claim against the defendants pursuant to 42 U.S.C. § 1983, alleging violations of her Fourteenth Amendment rights.  Under 42 U.S.C. § 1983, a private party may recover in an action against any person acting under the color of state

law who deprives the party of his or her constitutional rights.  Section 1983 provides in

pertinent part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia subjects, or causes to be
> subjected, any citizen of the United States or other person
> . . . to the deprivation of any rights, privileges or
> immunities secured by the Constitution and law, shall be
> liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

Section 1983 does not by itself confer substantive rights, but instead provides a

remedy for redress when a constitutionally protected right has been violated.  Oklahoma

City v. Tuttle, 471 U.S. 808, 816 (1985).  Therefore, in order to succeed on a claim under

42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the violation of a right secured by the

Constitution; and (2) that the constitutional deprivation was committed by a person acting

under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

Here, I will construe Count One as alleging three separate claims of constitutional

violations.  First, Ms. Barnett alleges that she was denied her rights under the Fourteenth

Amendment for equal protection under the law.  See Am.Compl. ¶ 58.  Next, she alleges

that she was denied her due process rights and protections under the Fourteenth

Amendment.  Id. at ¶ 61.  Finally, Ms. Barnett alleges that Defendants Butterfield and

Holman together acted to conspire and violate her civil rights, interests, and protections.

Id. at ¶ 63.

### 1. Fourteenth Amendment Equal Protection Claim

The amended complaint alleges that Ms. Barnett was denied her rights under the Fourteenth Amendment for equal protection under the law when the defendants retaliated against her and treated her differently on the basis of her age and/or disability.  To state a claim under the Equal Protection Clause, a plaintiff must allege that (1) she is a member of a protected class; (2) she was treated differently from similarly situated individuals; and (3) this disparate treatment was based on her membership in the protected class.  See Kasper v. Cnty. of Bucks, 514 F.App'x 210, 214 (3d Cir. 2013) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)).

Here, Ms. Barnett has satisfied the first and third elements, but not the second. She alleges that she is a member of two separate protected classes, i.e., one based on her age and another based on her disability.  Further, she alleges that the defendants based their illegal conduct on her age and/or disability.  Ms. Barnett alleges only, however, that the defendants treated her differently on the basis of her age and/or disability.  See Am.Compl. ¶ 58.  She has failed to allege the existence of similarly situated individuals, i.e., older and/or disabled teachers, who were treated differently by the defendants than she was treated.  Kasper, 514 F.App'x at 214.  The amended complaint is devoid of any allegation, conclusory or factual, which mentions the existence of another employee similarly situated, and thus, this claim is not pleaded with adequate specificity.  Id. Accordingly, this equal protection claim must fail, and I will grant the defendants' motion to dismiss this portion of Count One.

2. <u>Fourteenth Amendment Due Process Claim</u>

Ms. Barnett claims that her due process rights were violated when the defendants discharged her from employment without providing her notice, cause, and an opportunity to be heard.  <u>See</u> Am.Compl. ¶ 61.  The Fourteenth Amendment to our Constitution forbids "any state" from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, § 1.  To assert a claim for violation of due process, a plaintiff must show that: (1) she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property; and (2) the procedures available to her did not provide due process of law.  <u>Biliski v. Red Clay Consol. School Dist. Bd. of Educ.</u>, 574 F.3d 214, 219 (3d Cir. 2009).

As an initial matter, I must determine whether Ms. Barnett had a property interest in her employment with the District.  In order to have a property interest in one's employment, an individual must "have a legitimate claim of entitlement to it."  <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972).  Property interests "are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law . . . .'"  <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 538 (1985).  An employment agreement may establish a protected property interest under the Fourteenth Amendment if the contract includes a provision that the state entity can only terminate the employment "for cause."  <u>Linan-Faye Const. Co., Inc. v. Hous. Auth.</u>, 49 F.3d 915, 932 (3d Cir. 1995).

Here, Ms. Barnett was hired on June 26, 2009 pursuant to a three-year contract as a temporary professional employee, which provided that if she were to serve the District

satisfactorily for a period of three years, she would be tendered a contract of employment. The contract further provided that it would continue in effect until the expiration of three years of satisfactory service unless terminated by the Board of School Directors after a notice in writing that she had been rated unsatisfactory by the District Superintendent of Schools.  See Am.Compl. Exh. C.  Further, under the Pennsylvania School Code:

> It shall be the duty of the district superintendent to notify each temporary professional employee, at least twice each year during the period of his or her employment, of the professional quality, professional progress, and rating of his or her services. *No temporary professional employee shall be dismissed unless rated unsatisfactory*, and notification, in writing, of such unsatisfactory rating shall have been furnished the employee within ten (10) days following the date of such rating. The rating of a temporary professional employee shall be done as provided in section one thousand one hundred twenty-three of this act.

24 P.S. § 11-1108(a) (emphasis added).  Accordingly, because Ms. Barnett could only be dismissed for cause, i.e., if she were rated unsatisfactory, I find that Pennsylvania law gave her a property interest in her former position with the District sufficient to assert a claim for a violation of due process.

I further note that Ms. Barnett's recitation of the facts in this Count is inaccurate in one small but important way.  She indicates that the defendants discharged her from employment, when in reality she signed a document dated March 25, 2012, in which she submitted her irrevocable resignation with the District effective June 2012.  See Am.Compl. Exh. H.  An employee's resignation from public employment is presumed to

be voluntary.  Leheny v. City of Pittsburgh, 183 F.3d 220, 227 (3d Cir. 1999).  As the court explained:

> This presumption remains intact until the employee presents evidence to establish that the resignation … was involuntarily procured.  If an employee retires [or resigns] of [her] own free will, even though prompted to do so by some action of his employer, [she] is deemed to have relinquished [her] property interest in [her] continued employment for the government, and cannot contend that [she] was deprived of [her] due process rights.

Id.  There are two circumstances in which an employee's resignation will be deemed involuntary for due process purposes: (1) when the employer forces the resignation by coercion or duress, or (2) when the employer obtains the resignation by misrepresenting a material fact to the employee.  Id. (citing Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995)).

Here, it is clear that Ms. Barnett alleges that the defendants forced her to resign by coercion or duress.  In determining whether a resignation was involuntary due to coercion or duress, a court may consider the following factors: (1) whether the employee was presented with an alternative to resignation; (2) whether the employee understood the nature of the choice she was given; (3) whether the employee had a reasonable time to choose; (4) whether the employee was permitted to select the effective date of resignation; and (5) whether the employee had the advice of counsel. Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995)

After a review of these factors, I am persuaded that Ms. Barnett has pleaded sufficient allegations to show that her resignation was indeed involuntary.  First, the

"alternative to resignation" she was given by the defendants was to be fired and face disastrous consequences with the Pennsylvania Department of Education including a loss of her teacher certification and livelihood.  This was hardly a real alternative by any means, especially where there is a question of whether the defendants actually lacked good cause to believe that grounds for termination existed.  See Stone v. University of Maryland Medical System Corp., 855 F.2d 167, 174 (4th Cir. 1988) (The assessment of whether real alternatives were offered is gauged by an objective standard rather than by the employee's purely subjective evaluation; that the employee may perceive her only option to be resignation is irrelevant).

It also appears that Ms. Barnett understood the nature of this so-called choice.  The amended complaint alleges that, after meeting with the defendants on March 2, 2012, she became "scared, intimidated, fearful, and emotionally distressed over the threat of losing her teaching license, career, and livelihood."  See Am.Compl. ¶ 31.

The third factor also weighs in Ms. Barnett's favor.  Ms. Barnett was given the ultimatum on March 2, 2012.  As the defendants point out, she submitted her resignation over two months later on May 16, 2012.  However, the record contains an unsigned document dated March 7, 2012, in which Ms. Barnett attempted to submit her irrevocable resignation.  See Am.Compl. Exh. G.  In an email, her union representative instructed Ms. Barnett to not submit that letter because he preferred that the language of her resignation be shorter and more to the point.  See Am.Compl. Exh. F.  Nevertheless, attempting to write her resignation within a few days of the meeting shows that Ms.

Barnett must have been made to feel that it was necessary for her to act quickly and submit the resignation as soon as possible.

The fourth factor also weighs in Ms. Barnett's favor as the effective date of resignation was dictated by the defendants.  Finally, there is no indication that Ms. Barnett had the advice of counsel during this period.  Accordingly, although Ms. Barnett submitted an irrevocable resignation, the surrounding circumstances show that it was involuntarily procured, and that the protections of the due process clause were triggered.

The root requirement of the due process clause is that an individual be given an opportunity for a hearing before she is deprived of any significant property interest. Loudermill, 470 U.S. at 542 (requiring more than notice and an opportunity to respond "would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee").  Here, Ms. Barnett alleges that the defendants discharged her without providing the required notice, cause, and opportunity to be heard.[2] See Am.Compl. ¶ 61.  She further alleges that her resignation was tendered less than sixty days before it became effective contrary to the required terms of her contract, and that the Superintendent failed to furnish her with the required notice that her performance was unsatisfactory.  Accordingly, I find that Ms. Barnett has sufficiently pleaded a claim

---

[2]  I note that the Pennsylvania School Code also provides:  "The board of school directors in any school district, except as herein otherwise provided, shall after **due notice, giving the reasons therefore, and after hearing if demanded**, have the right at any time to remove any of its officers, employees, or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct.  24 P.S. § 5-514 (emphasis added).

for the violation of her due process rights, and I will deny the defendants' motion to dismiss this portion of Count One.

        3.  Conspiracy Claims against the Individual Defendants

     Ms. Barnett alleges that "Defendants Butterfield and Holman together acted to conspire and violate Plaintiff's civil rights, interests, and protections pursuant to 42 U.S.C. § 1983." See Am.Compl. ¶ 63.  To state a § 1983 conspiracy claim, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.  See Simonds v. Del. County, et al., 13-cv-7565, 2015 U.S. Dist. LEXIS 7159, *17 (E.D. Pa. July 1, 2014).  The elements of a conspiracy are a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.  Id. (quoting Hammond v. Creative Fin. Planning Org., Inc., 800 F. Supp. 1244, 1249 (E.D. Pa. 1992).  To state adequately a claim for conspiracy under § 1983, the plaintiff must make specific factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.  Id.  Direct evidence of a conspiracy is rarely available and the existence of a conspiracy must usually be inferred from the circumstances, but the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy, i.e., an agreement and concerted action.  Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 184-85 (3d Cir. 2009); see also Adams v. Teamsters Local 115, 214 F.App'x 167, 175 (3d Cir. 2007) (conclusory allegations of concerted action, without allegations of fact that reflect joint action, are insufficient to

state a claim for conspiracy).  Furthermore, when pleading a conspiracy claim, a plaintiff cannot rely upon subjective suspicion and speculation.  Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

Here, Ms. Barnett has failed to plead particularized allegations of conspiracy.  No facts in the amended complaint could lead to an inference of a conspiracy.  There is nothing to suggest that Defendant Holman was aware that Defendant Butterfield had made the unsatisfactory performance rating of Ms. Barnett for an allegedly ulterior, discriminatory purpose.  Based on the pleadings, it is likely that Defendant Holman's actions were motivated by what he believed to have been a legitimate unsatisfactory rating.  Accordingly, because Ms. Barnett has failed to plead a claim of § 1983 conspiracy, I will grant the defendants' motion to dismiss this portion of Count One.

### 4. Claim for Punitive Damages Against Defendants

In addition to requesting other types of damages, Ms. Barnett is also seeking an award of punitive damages from the individual defendants.  She concedes that the individually named defendants, acting in their official capacities, are not liable for punitive damages.  Defendants in their individual capacities, however, can be liable. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." See Runco Transportation, et al. v. Mid Valley School District, et al., 14-cv-1261, 2015 U.S. Dist. LEXIS 18837, *30 (M.D. Pa. February 17, 2015) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).  Here, the allegations in the amended complaint, taken as true, set forth

14

sufficient facts which could warrant a jury to assess punitive damages against the individual defendants in their individual capacities. Accordingly, I will not yet strike Ms. Barnett's request for punitive damages from the amended complaint.

> 5. <u>School District of Lancaster</u>

In Count One, the amended complaint also names the School District of Lancaster as a defendant. A governmental entity, such as a public school district, cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 691 (1978). Rather, liability against a public entity under § 1983 can be found for monetary, declaratory, or injunctive relief only where the alleged unconstitutional action, implements or executes a policy statement, ordinance, regulation, or a decision officially adopted and promulgated by that public body's officers. <u>Id.</u> at 694. Thus, liability may be imposed on a public entity, such as the School District, where its official "policy or custom" "causes" an employee to violate another person's constitutional rights. <u>Id.</u>; <u>see also</u> <u>Brown v. School Dist. of Philadelphia</u>, 456 F.App'x 88, 90 (3d Cir. 2011) (citing <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 135 (3d Cir. 2010)).

Here, the amended complaint includes no allegations of such an official policy or custom of the School District which could said to be responsible for the alleged conduct of the individual defendants. Accordingly, I will dismiss the School District as a defendant in Count One.

### B.  Count Two -- ADEA

In Count Two, Ms. Barnett alleges that the District discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act.  The central provision of the ADEA provides that it shall be unlawful for an employer:

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this Act. See 29 U.S.C. § 623(a).

To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must demonstrate that she (1) was over the age of forty years; (2) was qualified for the position; (3) suffered an adverse employment decision; and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination.  Barbee v. SEPTA, et al., 323 F.App'x 159, 161 (3d Cir. 2009) (quoting Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 300-301 (3d Cir. 2004)); see also Fasold v. Justice, 409 F.3d 178, 185-186 (3d Cir. 2005); Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004).

It is important to note, however, that there is no hard-and-fast rule for what a plaintiff must present in order to make a *prima facie* showing.  Rather, "the precise

elements of a plaintiff's *prima facie* case may vary with the particular circumstances."
Waldron v. SL Indus., Inc., 56 F.3d 491, 494 n.3 (3d Cir. 1995); see also Jones v. Sch.
Dist. of Phila., 198 F.3d 403, 411 (3d Cir. 1999) ("[A] *prima facie* case cannot be
established on a one-size-fits-all basis.")

For our purposes here, accepting all factual allegations as true, Ms. Barnett has
established a *prima facie* case of age discrimination. She is over forty years old, and
alleges that she had been considered qualified for her job. See Am.Compl. ¶¶ 10, 14,
16a, 20, 22. She further alleges that she was pressured to resign her employment, and
was replaced with a "sufficiently younger" individual who was not disabled. Id. at ¶¶ 30,
39. Accepting the allegations in the amended complaint as true and drawing all
inferences in Ms. Barnett's favor, I find that she has successfully stated a claim for age
discrimination upon which relief might be granted. Accordingly, I will deny the motion
to dismiss Count Two.

### C.  Count Three -- OWBPA

In Count Three, Ms. Barnett brings a claim under the Older Workers Benefit
Protection Act of 1990, 29 U.S.C. § 626. The OWBPA amended the ADEA to ensure
that waiver of ADEA rights is knowing and voluntary. Specifically, 29 U.S.C. §
626(f)(1) states that an employee "may not waive any right or claim under [the ADEA]
unless the waiver is knowing and voluntary." The OWPBA then provides standards for
what constitutes a knowing and voluntary waiver.

Ms. Barnett attached a document to her amended complaint entitled a "Letter of
Agreement between the School District of Lancaster and the Lancaster Education

17

Association."  See Am.Compl. Exh. I.  This document, dated May 16, 2012, is signed by Ms. Barnett, Defendant Holman, and a non-party union representative.  Ms. Barnett alleges that this Letter of Agreement "effectively waived [her] rights . . . in violation of the Older Workers Benefit Protection Act."  See Am.Compl. ¶ 49.  A careful reading of the document, however, belies Ms. Barnett's allegation.  The document contains no language that can be construed to be a waiver of any of Ms. Barnett's rights, especially her rights under the ADEA as required here.  The OWPBA only protects against improper waiver of a person's ADEA rights.  Accordingly, because there can be no violation of the OWPBA under these circumstances, I will grant the defendants' motion to dismiss Count Three.

**D.  Count Four -- ADA**

In Count Four, Ms. Barnett alleges employment discrimination based on her disability under the Americans with Disabilities Act, 42 U.S.C. § 12112(a).  She claims that shortly after she informed Defendant Butterfield about her alcoholism, he "falsely accused [her] of being incompetent and he rated her January 2012 evaluation as unsatisfactory and her 'deficits are significant and persistent' for her January 2012 summative evaluation."  See Am.Compl. ¶ 24.

The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Turner v. The Hershey Company, 440 F.3d 604, 607-608 (3d Cir. 2006) (quoting 42

U.S.C. § 12112(a)).  Accordingly, in order to establish a *prima facie* case of disability

employment discrimination, a plaintiff must demonstrate that: (1) she is a disabled person

within the meaning of the ADA; (2) she is otherwise qualified to perform the essential

functions of the job, with or without reasonable accommodations by the employer; and

(3) she suffered an adverse employment decision as a result of the discrimination.

Colwell v. Rite Aid, et al., 602 F.3d 495, 504 (3d Cir. 2010).  The ADA defines a

"qualified individual with a disability" as "an individual with a disability[1] who, with or

without reasonable accommodation, can perform the essential functions of the

employment position that individual holds or desires."  Id. (quoting 42 U.S.C. §

12111(8)).

Accepting as true all of the well-pleaded allegations in this amended complaint

with all reasonable inferences drawn in Ms. Barnett's favor, I find that Ms. Barnett has

established a *prima facie* case under the ADA for our purposes here.  The defendants do

not dispute that alcoholism is a disability covered by the ADA, or that Ms. Barnett was

otherwise qualified to perform the essential functions of her job.  The defendants do

argue, however, that Ms. Barnett has not averred any facts to demonstrate that she was

separated from her employment due to her alcoholism.  I do not agree.

---

[1]  A "disability" is defined as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.  42 U.S.C. § 12102(2).  Federal Regulations define a "physical or mental impairment" as either: (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.  29 C.F.R. § 1630.2(h).

Ms. Barnett alleges that she is a certified, experienced, educated, and qualified teacher for grades K-12 special education, K-6 elementary education, and for middle school level mathematics and science.[3]  See Am.Compl. ¶14.  She worked for the Defendant School District as a long term substitute teacher during the 2008-2009 academic year where her performance was rated "outstanding," and she was given a strong recommendation for permanent employment with the District.  Id. at ¶ 16.  After she began as a full-time teacher there and for the first two years, she received satisfactory and proficient performance reviews that commended her flexibility, high standards, and productive thinking skills.  Id. at ¶ 20.  On November 21, 2011, during her third year of teaching at the District, she received an exemplary performance rating by the Assistant Principal of her school who highly recommended Ms. Barnett.  Id. at ¶ 22.

In December 2011, however, Ms. Barnett mentioned to Defendant Butterfield that she was disabled and a recovering alcoholic. Id. at ¶ 23. In January 2012, notwithstanding all of her previous positive evaluations, Defendant Butterfield somehow rated Ms. Barnett's performance as unsatisfactory, and accused her of being incompetent.  Id. at ¶ 24.  Based on that performance review, Defendants Butterfield and Holman allegedly threatened Ms. Barnett and forced her to resign from her employment with the District. At this stage of these proceedings, it can be inferred from the temporal relationship between Ms. Barnett's disclosure and Defendant Butterfield's negative evaluation, that

---

[3]  Indeed, it is interesting to note that there is evidence attached to the amended complaint which shows that Ms. Barnett's special education students greatly improved their scores in the Pennsylvania System of School Assessment for the 2011-2012 academic year compared with the previous year when she was not their teacher.  See Am.Compl. Exh. J.

Defendant Butterfield began to regard Ms. Barnett as being disabled and that his subsequent conduct towards her, i.e., the adverse employment decision, was based on that disability.[4]  Accordingly, I will deny the defendants' motion to dismiss Count Four of the amended complaint.

### E.  Count Five -- PHRA

In Count Five, the amended complaint alleges a violation of the Pennsylvania Human Relations Act.  The PHRA provides:  It shall be an unlawful discriminatory practice, . . . (a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.  43 Pa. Cons. Stat. Ann. § 955(a).  While Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in the ADA or the ADEA, its courts nevertheless generally interpret the PHRA in accord with its federal counterparts.  Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir. 1995).  Because the analysis for these federal claims

---

[4]  The defendants' insistence that Ms. Barnett resigned her employment voluntarily is laughable given the allegations in this amended complaint.  See Motion to Dismiss, Document #7-1 at 7, 21, 23

is the same for claims under the PHRA, it is not necessary to perform a separate analysis. <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296, 306 (3d Cir. 1999); <u>see also</u> <u>Kelly v. Drexel University</u>, 94 F.3d 102, 105 (3d Cir. 1996) (a court may specifically address only the federal employment discrimination claims which analysis applies equally to the PHRA claim). Accordingly, having found that the amended complaint in this action has successfully pleaded claims under the ADA and the ADEA, I will deny the defendants' motion to dismiss Count Five alleging violations of the PHRA.

### F.  Counts Six and Seven – State Law Claims

In Count Six, Ms. Barnett alleges that Defendants Butterfield and Holman tortiously interfered with her employment contract through conduct which was malicious, intentional, reckless, willful, and outrageous.  <u>See</u> Am.Compl. ¶¶ 81-83.  In Count Seven, she alleges that Defendants Butterfield and Holman intentionally inflicted emotional distress upon her by their outrageous, indecent, abusive, extreme, deliberate, intentional, malicious, wanton, willful, and reckless actions and conduct.  <u>Id.</u> at ¶¶ 85, 89. The defendants argue that they cannot be held liable for these state law torts pursuant to the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541 *et seq*.  I am not fully persuaded.

The PSTCA provides that a local agency cannot be held "liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  <u>See</u> 42 Pa. Cons. Stat. Ann. § 8541.  It further provides for eight exceptions to this rule: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5)

utility services facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of

animals.  See 42 Pa. Cons. Stat. Ann. § 8542(b).  Additionally,

> "[m]unicipal employees, including school district
> employees, are generally immune from liability to the
> same extent as their employing agency, so long as the act
> committed was within the scope of the employee's
> employment. 42 Pa. Cons. Stat. § 8545.  However, there
> is an exception to this general rule: Employees are not
> immune from liability under § 8545 where their conduct
> amounts to 'actual malice' or 'willful misconduct.'"

Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006).  The Pennsylvania Supreme Court

has recognized willful misconduct as requiring a demanding level of fault.  Id.  "Willful

misconduct has been defined by the Pennsylvania Supreme Court as 'conduct whereby

the actor desired to bring about the result that followed or at least was aware that it was

substantially certain to follow, so that such desire can be implied.'"  Id. (quoting Renk v.

City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)).  Our Court of Appeals has made clear

that willful misconduct is more than recklessness, deliberate indifference, and the

knowing disregard of risks, but instead requires "specific intent."  Bright v.

Westmoreland Cnty., 443 F.3d 276, 287 (3d Cir. 2006).

Here, the facts alleged show that the conduct of Defendants Butterfield and

Holman was committed within the scope of their employment.  The facts alleged also,

however, show that Defendant Butterfield's conduct could have amounted to actual

malice or willful misconduct.  The amended complaint alleges that Ms. Barnett had

received satisfactory ratings for several semesters before January 2012 when Defendant

Butterfield rated Ms. Barnett's performance as unsatisfactory a month after learning of

her disability, and then threatened her and coerced her to resign. Thus, it can be inferred that Defendant Butterfield made that negative evaluation knowing the result that would follow, i.e., that an unsatisfactory rating would be enough to terminate Ms. Barnett's employment. There are no such factual allegations against Defendant Holman. As the District's Director of Human Resources, Defendant Holman performed the duties expected of him upon learning of a teacher's unsatisfactory rating. Accordingly, I find that Defendant Holman cannot be held liable pursuant to the PSTCA for the two state law torts in the amended complaint, and I will dismiss him as a defendant in Counts Six and Seven in both his official and individual capacities. At this stage of the litigation, however, Defendant Butterfield is not entitled to the same immunity from liability under the PSTCA because his conduct could be viewed as amounting to actual malice or willful misconduct. Thus, I will continue with a discussion of Counts Six and Seven as they pertain to Defendant Butterfield.

### 1. Tortious Interference with Contractual Relations

Under Pennsylvania law, "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract." Judge Tech. Servs., Inc. v. Clancy, 813 A.2d 879, 887 (Pa. Super. 2002). In order to prove a claim for intentional interference with contractual relations, a plaintiff must demonstrate: (1) the existence of a contractual relationship; (2) the defendant's intent to harm the plaintiff by interfering with that contractual relationship;

(3) the absence of privilege for such interference; and (4) damages resulting from the defendant's actions. Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 530 (3d Cir. 1998); Triffin v. Janssen, 626 A.2d 571, 574 (Pa. Super. 1993).

Critical to the right of recovery under the theory of tortious interference is the existence of a contractual relationship between the plaintiff and a party other than the defendant. Nix v. Temple University, 596 A.2d 1132, 1137 (Pa. Super. 1991). A corporation cannot tortiously interfere with a contract to which it is a party. Nix, 596 A.2d at 1137. Since a corporation acts through its agents and officers, such agents and officers cannot be considered third parties when they are acting in their official capacities. Id.; see also Avins v. Moll, 610 F. Supp. 308, 318 (E.D. Pa. 1984) (holding that the overwhelming weight of authority is that a corporate officer is not personally liable for tortious interference).

Thus, I must agree with Defendant Butterfield that the first element of this claim is not satisfied because, in his official capacity, he was an agent of the District, and any alleged interference could not have involved a contract between Ms. Barnett and a third party. I will dismiss Defendant Butterfield in his official capacity from Count Six. The amended complaint, however, also alleges that Defendant Butterfield acted individually on his own behalf.

A review of the factual allegations reveals that Ms. Barnett has successfully pleaded a claim for tortious interference with contractual relations against Defendant Butterfield in his individual capacity. The amended complaint alleges that Ms. Barnett entered into a contractual relationship with the District on June 26, 2009. It further

25

alleges that Defendant Butterfield, in his individual capacity and with the absence of privilege, purposefully acted to interfere with that contract, and intended to harm the existing relationship between Ms. Barnett and the District.  As a result, Ms. Barnett's employment was terminated.  Accordingly, I will grant the defendants' motion to dismiss Defendant Butterfield in his official capacity in Count Six, but deny the motion as to Defendant Butterfield in his individual capacity.

2.  Intentional Infliction of Emotional Distress

In Count Seven, Ms. Barnett brings a claim of intentional infliction of emotional distress against Defendant Butterfield.[5]  Defendant Butterfield moves for this count to be dismissed arguing that Ms. Barnett failed to allege sufficiently outrageous conduct.  I must agree.

For a plaintiff to recover for the intentional infliction of emotional distress, "[t]he [defendant's] conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (holding that "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress");  see also Green v. Bryant, 887 F. Supp. 798, 802 (E.D. Pa. 1995) (dismissing plaintiff's intentional infliction of emotional distress claim where defendant employer fired plaintiff knowing that plaintiff was an abused spouse); Capresecco v. Jenkintown Borough, 261 F.Supp.2d 319, 323 (E.D. Pa.

---

[5]  Defendant Holman had also been named as a defendant in this Count, but was dismissed above.

2003) (holding that defendants' alleged termination of plaintiff knowing it would effectively deprive plaintiff of medical care during his serious illness was not sufficiently outrageous to support a claim for intentional infliction of emotional distress).

Here, Ms. Barnett claims that Defendant Butterfield gave her an unsatisfactory performance review because of her age and/or disability.  She further claims that Defendant Butterfield used the unsubstantiated negative review to force her to resign.  If these allegations are true, they would reveal a distasteful side of Defendant Butterfield, but not conduct outrageous enough to support a claim for intentional infliction of emotional distress.  Accordingly, I will grant the defendants' motion to dismiss Count Seven in its entirety.

An appropriate Order follows.